In the Matter of JOSEPHINE CHOE, Petitioner, v DAVID AXEL-ROD, as Commissioner of the Department of Health of the State of New York, et al., Respondents.

Third Department, November 3, 1988

APPEARANCES OF COUNSEL

*Fried, Spector, Scher & Feldman (Irwin R. Karassik* and *Diane L. Weinstein* of counsel), for petitioner.

*Robert Abrams, Attorney-General (William J. Kogan, Martin Hotvet* and *Denise A. Hartman* of counsel), for respondents.

## OPINION OF THE COURT

WEISS, J. P.

An anonymous phone call to the State Department of Health precipitated an investigation of two alleged incidents of patient neglect at the New Vanderbilt Nursing Home on Staten Island involving a patient and Danny O'Brien, an orderly. The first incident occurred on December 15, 1982 when O'Brien allegedly left the patient unattended in the shower and the latter sprayed himself with hot water sustaining second degree burns on his forehead. A similar incident ostensibly occurred on May 19, 1983 but no one was injured. Janette Favia, an investigator for the Department, concluded

that both incidents constituted patient neglect and that petitioner, the Director of Nursing at the facility during this period, failed to report the incidents in violation of Public Health Law § 2803-d and 10 NYCRR part 81. Following a hearing, an Administrative Law Judge (hereinafter ALJ) sustained the charge relating to the December 15, 1982 incident but dismissed the May 19, 1983 charge as unsubstantiated; a fine of $150 was recommended. Respondent Commissioner of Health adopted the ALJ's report, precipitating this CPLR article 78 proceeding to annul the administrative determination.

Petitioner's initial contention is that the Department failed to establish a prima facie case of patient neglect so as to trigger the pertinent reporting requirements. Public Health Law § 2803-d requires the filing of a report with the Department when a person has reasonable cause to believe that a resident of a residential health care facility has been abused, mistreated or neglected (see, 10 NYCRR 81.2 [a]; 81.1 [c]). The evidence at the hearing included Favia's written report and the testimony of Vilma Osborne, a supervisor in the Patient Care Investigations Unit of the Department, who opined, on the basis of the Favia report, that the December 15, 1982 incident should have been reported to the Department.* In addition, there was unrefuted evidence that O'Brien received a two-day suspension as a result of this incident. Petitioner testified that she spoke with several employees of the nursing home concerning the incident and concluded that it was an unavoidable accident. While the Favia report posited that O'Brien turned his back on the patient and moved a few feet away to get a towel, at which time the patient turned on the water and was burned, petitioner sought to prove that the accident occurred in a split second when O'Brien merely turned to grab a towel from the wheelchair alongside the shower stall. Other employees agreed with petitioner that this was not a reportable instance of neglect.

■ Petitioner primarily challenges the sufficiency of the Department's proof because it is based largely upon hearsay evidence. "It is now well established that an agency can prove its case through hearsay evidence (see, e.g., People ex rel. Vega v Smith, 66 NY2d 130, 139; see also, State Administrative

* Osborne did not speak to Favia, O'Brien, the patient or petitioner, thus limiting the basis of her knowledge solely to the written report. Neither Favia nor O'Brien were available to testify at the hearing.

Procedure Act § 306 [1]), so long as it is believable, relevant and probative" *(Matter of De Carlo v Perales,* 131 AD2d 31, 34-35). In the final analysis, the evidence showed that the patient was left unattended, albeit momentarily, O'Brien was disciplined for that act, and petitioner did not report the incident. The finding is thus supported by the " 'kind of evidence on which responsible persons are accustomed to rely in serious affairs' " *(People ex rel. Vega v Smith, supra,* at 139, quoting *National Labor Relations Bd. v Remington Rand,* 94 F2d 862, 873, *cert denied* 304 US 576).

Neither *Matter of Stoker v Tarentino* (64 NY2d 994) nor *Matter of Chlebowski v Axelrod* (90 AD2d 915), relied on by petitioner, compel a different result. In *Stoker,* the petitioner was charged with patient neglect for leaving a wheelchair patient unattended in the bathroom, but the only evidence confirmed that a second nurse was present when the petitioner departed *(Matter of Stoker v Tarentino, supra,* at 997). Similarly, in *Chlebowski,* the only evidence presented in support of a physical abuse charge was the testimony of a coemployee whose view of the incident was admittedly obstructed *(Matter of Chlebowski v Axelrod, supra,* at 916). In neither case was there substantial evidence of patient abuse or neglect. Here, by contrast, the evidence included a description by the very employee involved in the patient neglect, which confirms that the patient was left unattended at the time he sustained his injuries on December 15, 1982. Petitioner's suggestion that her failure to report was an excusable judgmental error is unavailing. The "error of judgment" rule relied on by petitioner pertains to instances of professional malpractice and is inapplicable here.

■ Petitioner further maintains that the governing regulations are unconstitutionally vague since they inadequately define the pivotal terms "reasonable cause" and "neglect". Initially, we observe that petitioner's failure to raise this facial, constitutional challenge before the administrative agency does not preclude the argument *(see, Watergate II Apts. v Buffalo Sewer Auth.,* 46 NY2d 52, 57; *Leemhuis v New York State Pub. Employees Fedn.,* 121 AD2d 796, 798, *appeal dismissed* 68 NY2d 910). A CPLR article 78 proceeding, however, is not a proper vehicle to challenge the constitutional validity of a legislative enactment *(Press v County of Monroe,* 50 NY2d 695, 702). We may, and hereby do, convert this

portion of the proceeding into a declaratory judgment action and proceed to the merits (see, e.g., *Matter of Top Tile Bldg. Supply Corp. v New York State Tax Commn.,* 94 AD2d 885, *appeal dismissed* 60 NY2d 653, *appeal dismissed* 465 US 1095; *Matter of Montgomery Ward & Co. v New York State Dept. of Motor Vehicles,* 90 AD2d 643).

◼ A vagueness challenge to an administrative regulation raises the question of whether a reasonable person subject to the regulatory standard would comprehend what conduct was being prohibited (see, *Matter of Prusky v Webb,* 134 AD2d 718, 721; *Matter of Slocum v Berman,* 81 AD2d 1014, 1015, *mot to dismiss appeal granted* 54 NY2d 752). As indicated, Public Health Law § 2803-d (1) mandates the filing of a report where there is "reasonable cause" to believe that an instance of patient "neglect" has occurred. "Neglect" is defined as a "failure to provide timely, consistent, safe, adequate and appropriate services, treatment, and/or care to a patient * * * including but not limited to: nutrition, medication, therapies, sanitary clothing and surroundings, and activities of daily living" (10 NYCRR 81.1 [c]). "Reasonable cause" means that the circumstances provide "sufficient evidence for a prudent person to believe that * * * neglect has occurred" (10 NYCRR 81.1 [d]). In our view, this language is not unconstitutionally vague and would clearly alert persons engaged in rendering residential health care of the types of incidents constituting patient neglect, subject to the prescribed reporting requirements (*Matter of Prusky v Webb, supra,* at 721; *Matter of Slocum v Berman, supra,* at 1016). Given petitioner's experience in the residential health care field, as evidenced by her position as Director of Nursing, these regulations adequately informed her that the incident should have been reported.

◼ We also note that petitioner failed to preserve her claim of prejudice arising from the 1½-year delay between the time she demanded a hearing and the actual hearing date since this objection was not registered at the administrative hearing (see, *Matter of Saleem v Commissioner of Educ.,* 133 AD2d 953, 954; *Matter of Hennekens v State Tax Commn.,* 114 AD2d 599, 600). Nor can petitioner successfully interpose the doctrine of laches against the State (see, *Matter of Cortlandt Nursing Home v Axelrod,* 66 NY2d 169, 177, n 2, *cert denied* 476 US 1115). In any event, we do not find the administrative delay here unreasonable (*supra,* 66 NY2d, at 178-181). Finally, the penalty of a fine of $150 was clearly not shocking to our sense

of fairness *(see, Matter of Pell v Board of Educ.,* 34 NY2d 222, 233).

MIKOLL, YESAWICH, JR., LEVINE and HARVEY, JJ., concur.

Determination confirmed, and petition dismissed, without costs, and it is declared that 10 NYCRR 81.1 (c) and (d) have not been shown to be unconstitutional.